IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH ROSENFELD,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION and<br>U.S. DEPARTMENT OF JUSTICE,<br><br>Defendants. | Civil Action No. 90-3576 |

## THIRD DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), of the Federal Bureau of Investigation ("FBI"). RIDS, which was formerly located at FBI Headquarters in Washington, D.C., was relocated to Winchester, Virginia. As discussed below, RIDS is the FBI division that responds to requests made to the FBI under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of FOIA policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 277

employees who staff a total of ten (10) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, 5 U.S.C. § 552, as amended by OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524; the Privacy Act of 1974, 5 U.S.C. § 552a; Executive Order 13526; Presidential, Attorney General and FBI policies and procedures; judicial decisions; and other Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to the requests for information from its files pursuant to the provisions of the FOIA and the Privacy Act, and I have supervised the work of the FBI employees, as described below, in locating and processing records pursuant to the Court's orders on the motion filed by plaintiff in 2006. This declaration, which supplements the statements made in my Second Declaration, summarizes the extensive actions taken by the FBI to comply with the orders issued by the Court on that motion. I have reviewed the following documents related to these three cases: the Stipulation and Order dated October 23, 1995; the Settlement Agreement dated January 4, 1996; my Second Declaration dated November 9, 2006; the Court's Orders dated February 6 and October 23, 2007; and the FBI's status reports to plaintiff dated August 6, 2007; March 14, 2008; February 4, 2010; March 5, 2010; April 5, 2010; May 5, 2010; June 5, 2010; July 6, 2010; and August 4, 2010.

## A. The FOIA Requests and the Prior Litigation

(4)     These three cases (No. C-85-1709, C-85-2247, and C-90-3576), which were filed commencing in 1985 and were closed in 1996, have a long and complex history that spans over thirty years and includes documents that date back as far as the 1940s. Between 1981 and 1987, plaintiff made a series of FOIA requests for FBI records relating to several hundred subject matters. First, plaintiff's letter dated November 9, 1981 encompassed more than 225 subjects, including records relating to the Free Speech Movement, University of California officials, and related files detailing FBI investigations of political activities at the University of California, Berkeley, in the 1950s and 60s. On December 10, 1983, plaintiff submitted a FOIA request to the FBI's San Francisco office regarding records relating to a now defunct FBI counterintelligence program named "COINTELPRO." In response to these two requests, the FBI initially identified more than 350,000 potentially responsive pages. Plaintiff also submitted a FOIA request to the FBI on November 9, 1987, regarding 125 subjects, of which 91 were part of his 1981 request. The FBI identified approximately 216,600 pages as potentially to the 1987 request. The FBI also referred thousands of other documents responsive to these requests to numerous other agencies.

(5)     Since 1981, the FBI devoted many years to processing and reprocessing plaintiff's requests, due to the number of subjects involved and the sheer volume of records requested, internal administrative challenges related to the age of the documents requested and the duration of the required tasks, including the need to conduct manual searches for certain subjects involving a person's date of birth before 1959 or an organization created before 1980, and changes to the record-keeping systems and the FBI personnel involved; and the need to

repeatedly respond to plaintiff's frequent and detailed questions.

(6) Over the past thirty years, the FBI engaged in unprecedented efforts in responding to plaintiff's FOIA requests:

- As of 1996, the FBI located, processed, and released a total of approximately 323,934 pages of responsive records to plaintiff, many of which were released prior to the initiation of litigation. The FBI subsequently processed or reprocessed and released tens of thousands of additional pages.

- As of 1993, the FBI expended almost $1 million to process plaintiff's requests, including at one point dedicating 126 FOIPA Section personnel to work full-time on his requests (See Third Declaration of J. Gary Boutwell, dated September 23, 1993, at ¶¶27-29). As discussed below, the FBI subsequently expended substantial additional amounts. For example, after the Court ruled on the plaintiff's 2006 motion, the FBI spent more than $1 million to locate and process abstracts and abstract cards stored at an off-site location controlled by the National Archives and Records Administration.

- The FBI took unprecedented steps to accommodate the processing of plaintiff's requests. For example, the FBI met face-to-face with plaintiff for "oral Vaughn declarations" to offer explanations for the FBI's withholdings and redactions.

### B. The 1996 Settlement Agreement

(7) I am aware that, after many years of litigation, the parties reached a settlement agreement in December 1995, which was approved by the Court in January 1996, and these three cases were then closed. The Settlement Agreement dated January 4, 1996 is directed to the subjects identified in a Stipulation and Order dated October 23, 1995. The Stipulation lists 140 main subjects, of which 17 include sub-categories with further information that required over 175 additional searches, subsequent reviews of potentially responsive material, and re-reviews of previously released material.

(8) After these cases were settled in 1996, the FBI processed or reprocessed and released voluminous records regarding the listed subjects, and referred other records to other agencies for processing. The FBI released records through a series of letters to plaintiff dated March 20, 1996; May 2 and 23, 1996; July 26, 1996; September 26, 1996; November 26, 1996; January 24, 1997; February 27, 1997; April 9 and 18, 1997; February 9, 1998; February 2 and 26, 1999; June 24, 1999; August 31, 1999; September 30, 1999; December 30, 1999; January 31, 2000; February 29, 2000; March 28, 2000; May 31, 2000; June 30, 2000; December 31, 2001; February 28, 2002; June 12, 2003; April 13, 2004; May 20, 2004; November 29, 2004; December 1, 2004; February 11, 2005; March 25, 2005; April 26, 2005; May 31,2 005; June 30, 2005; July 15, 2005; September 20 and 30, 2005; October 31, 2005; November 30, 2005; December 23, 2005; January 31, 2006; and February 28, 2006. For example, in November 1996, the FBI reprocessed and released 62,050 pages to plaintiff concerning 82 subjects; and in January 1997, the FBI reprocessed and released 75,303 pages concerning 124 subjects.

(9) During this period, the FBI also provided status reports to plaintiff and responded to plaintiff's inquiries, including letters from the FBI to plaintiff dated April 17, 1998; August 26, 1998; March 12, 1999; January 25, 2002; and September 6, 2002. Our records indicate that, in February 2006, the FBI informed plaintiff that it had completed processing or reprocessing the records, making what was described as a final release at that time.

(10) These actions taken by the FBI to locate, process, and release records from 1996 through 2006 resulted in substantial expenditures beyond the more than $1 million previously spent..

## C. Plaintiff's 2006 Challenges

(11) In September 2006, plaintiff sought to reopen these three cases, alleging that the FBI did not fully comply with the Settlement Agreement. Plaintiff raised a series of challenges regarding the FBI's search for, and processing and release of, various categories of records pursuant to the 1996 Agreement, including the following issues:

- *Records relating to Ronald Reagan;*
- *Records from supporting offices and offices of origin for nine individuals;*
- *Records for 13 individuals who were alive when the settlement was entered into;*
- *The status of records referred by the FBI to other agencies for processing;*
- *Abstracts and abstract cards for each subject of the request;*
- *Records relating to COINTELPRO;*
- *The status of missing records that had been placed "on locate" and;*
- *The status of declassification review by the FBI for certain records.*

(12) At a hearing on December 5, 2006, and in an order dated February 6, 2007, the Hon. Elizabeth Laporte made rulings on plaintiff's challenges, accepting some and rejecting others. The Court directed the parties to conduct certain tasks, and to meet and confer periodically regarding the status of these tasks as well as any disputes arising under the Orders. In August 2007, plaintiff filed a "renewed challenge" regarding abstracts. In October 2007, the parties reached an agreement as to abstracts, which was entered as a court order.

(13) Pursuant to the Court's orders on plaintiff's challenges, the FBI conducted extensive additional searches; located, processed or reprocessed, and released approximately

41,373 pages of records by way of rolling production as they became available; and conferred with other agencies regarding the status of certain records that had been referred by the FBI to such agencies. The FBI's release of records and information to plaintiff through letters from the FBI to plaintiff dated April 11, 2007; August 6, 2007; September 5 and 7, 2007; November 7 and 29, 2007; December 11, 2007; January 9 and 25, 2008; July 22, 2008; September 19, 2008; December 19, 2008; April 30, 2009; May 8, 2009; March 25, 2010; June 5, 2010; July 5 and 6, 2010; and August 4, 2010. In making these releases, the FBI identified the FOIA exemptions relied upon in withholding or redacting information.

(14) During this period, the FBI also sent periodic status reports to plaintiff setting forth at length and in detail the status of any remaining issues, through letters from the FBI to plaintiff dated June 6, 2007; August 6, 2007; November 19, 2007; March 14, 2008; May 8, 2008; February 4, 2010; March 5, 2010; April 5, 2010; May 5, 2010; June 5, 2010; July 6, 2010; and August 4, 2010. For example, the August 2007 status report, a copy of which is attached hereto as **Exhibit A**, is in the form of a nine-page single-spaced letter with a series of charts; and the March 2008 status report, a copy of which is attached hereto as **Exhibit B**, is in the form of a 24-page single-spaced letter with a series of charts. As with other status reports, these two reports discuss in detail the status of searches and records located, processed or referred, and/or released for each category.

(15) Plaintiff, having received such records and status reports, sent a series of letters to the FBI raising various issues, and the parties met and conferred periodically and exchanged correspondence to discuss issues raised by plaintiff. Plaintiff's communications included letters dated February 9, 2007; March 9 and 14, 2007; April 12, 2007; May 31, 2007; June 19, 2007;

July 2, 2007; August 7, 2007; October 10, 2007; November 30, 2007; December 21, 2007; January 18, 2008; April 11, 2008; May 16, 2008; October 26, 2009; June 3, 2010; October 29, 2010; December 15, 2010; and May 24, 2011. In response to plaintiff's inquiries, the FBI at various times provided further information, conducted additional searches, processed additional records, and reprocessed records, until plaintiff's questions were resolved. The FBI sent the last batch of records to plaintiff in August 2010, noting that all required tasks had been completed.

(16) These actions taken by the FBI from 2007 through 2010 in connection with plaintiff's challenges resulted in substantial expenditures beyond the amounts previously spent. To perform these activities, the FBI assigned seven Classification Unit employees, nine FOIA Unit employees, fifteen Litigation Unit employees, two Office of the General Counsel employees, numerous Work Processing Unit employees, and countless hours of management oversight.

(17) For example, during this period, the FBI expended more than $1 million of additional funds in connection with one of the issues raised by plaintiff's challenges, namely the abstracts and abstract cards that are stored at an off-site location controlled by the National Archives Records Administration ("NARA"). An abstract card consists of a 3-inch by 5-inch, two-ply carbon form typed by a FBI clerical employee who was not involved with the investigative activities of the case. Abstract cards were created and stored manually, and must be searched manually. Abstract cards are not now - and were never intended - to be used as a means to search for and retrieve documents from a case file. Rather, abstract cards were a tool used by FBI clerks (before the FBI adopted automation equipment) to determine the next sequential serial number to assign to a document prior to its placement in the case file. The FBI paid NARA to

locate and retrieve numerous boxes of responsive abstracts. Subsequently, the FBI reviewed and processed the responsive material, releasing approximately 8,564 pages of abstracts to plaintiff in 2008.

### D. The 2007 Case and the Settlement Conferences

(18)     In June 2007, plaintiff filed the Complaint in Civil Action No. 07-3240, challenging the FBI's processing of other FOIA requests submitted by plaintiff after the parties settled the three consolidated cases, including documents regarding Ronald Reagan.

(19)     On January 24, 2011, the Hon. Marilyn Hall Patel, at a hearing on a summary judgment motion in the 2007 case, referred that case for settlement conference. After plaintiff represented that there were also open issues in the other (consolidated) cases, Judge Patel also referred those cases for settlement. Settlement conferences were held by the Hon. Joseph Spero on March 15 and June 21, 2011. In those conferences and previously, plaintiff proposed that, despite applicable FOIA exemptions, the FBI "release all information" in several categories of records that are not the subject of the Court's 2007 order. Plaintiff's list includes documents that were processed and released before that order was issued; documents that were processed and released in the 2007 case; and documents that plaintiff contended may be responsive to other FOIA requests that are not the subject of these three cases.

(20)     In essence, plaintiff has again sought to reopen these closed cases now in order to revisit the FBI's processing of more than 300,000 pages of records from 1981 to 2006, before plaintiff filed the motion alleging non-compliance, as well as the more than 40,000 pages of records that were processed by the FBI pursuant to the Court's orders on plaintiff's motion, even though there are no remaining issues regarding that motion. If plaintiff were permitted to revisit

these issues now, the case would continue for year into the future, due to the number of subjects involved and the sheer volume of records requested; plaintiff's failure to raise such issues either at the time the documents were processed and released, or in the 2006 motion alleging non-compliance; and internal administrative challenges related to the age of the documents requested and the duration of the required tasks, including the need to conduct extensive manual searches for the previously processed material, the changes to the record-keeping system and the manner in which documents processed from 1981 to 2006 would have to be converted from paper format to electronic format for re-processing.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that **Exhibits A through B** attached hereto are true and correct copies.

Executed this 21st day of December, 2011.

*[signature]*

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, VA