United States District Court

For the Northern District of California

1
2
3
4
5                        UNITED STATES DISTRICT COURT
6                      NORTHERN DISTRICT OF CALIFORNIA
7
8    SETH ROSENFELD,                          No. C-90-3576 EMC
9              Plaintiff,
10        v.                                  **ORDER GRANTING PLAINTIFF'S**
                                              **MOTION FOR AN AWARD OF**
11   UNITED STATES DEPARTMENT OF              **ATTORNEYS' FEES AND COSTS**
     JUSTICE, *et al.*,
12                                            **(Docket No. 157)**
               Defendants.
13   _____/
14
15
16         Plaintiff Seth Rosenfeld filed a complaint on December 14, 1990, against Defendants United
17   States Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), seeking the
18   disclosure of certain government documents under the Freedom of Information Act ("FOIA"), 5
19   U.S.C. § 552. *See* Compl.  After multiple years of litigation, the parties entered into a settlement
20   agreement on January 12, 1996, in which the FBI agreed to "reprocess and release the documents at
21   issue"; the agreement provided that the court would retain jurisdiction to hear challenges regarding
22   the parties' compliance with the agreement.  *See* Settlement Agreement ¶¶ 5-6 (Docket No. 161, Ex.
23   A).  The Settlement Agreement reserved Plaintiff's right to "seek attorney fees and costs" for work
24   done in "all subsequent phases of the litigation."  *Id.* ¶ 7(b).  Now before the Court is Plaintiff's
25   Motion for an Award of Attorneys' Fees and Costs (Docket No. 157) ("Pl.'s Fee Motion").  For the
26   reasons stated below, the Court **GRANTS** Plaintiff's Motion and awards Plaintiff a total of
27   **$107,242.15** in fees and costs.
28

# I.   FACTUAL & PROCEDURAL BACKGROUND

Seth Rosenfeld is a professional journalist.  He has written numerous publications about the FBI's activities in connection with the University of California during the Cold War, and the impact those activities had on the "academic freedom and civil liberties" of American citizens.  Third Decl. Of Seth Rosenfeld (Docket No. 158) ¶ 1.  Much of his research and writing has drawn extensively on "FBI records released pursuant to the Freedom of Information Act."  *Id*. ¶ 5.  Over the course of his career, Plaintiff has published numerous articles about the FBI's activities "in regard to prominent public figures and significant public events in the 1950s and 1960s," including the FBI's political surveillance of University of California students and faculty, and the FBI's attempts to oust Clark Kerr as president of the University.  Third Rosenfeld Decl.  *Id.* ¶ 2.  Plaintiff is currently writing a book about the FBI's activities in connection with the University of California during the Cold War that expands upon his published articles.  *Id*. ¶ 3.

Plaintiff's present case flows from a multi-decade dispute between himself and the FBI over whether certain documents in the FBI's custody ought to be released under FOIA.  In 1981, he requested "any and all" FBI records "pertaining to the University of California" through FOIA as part of his research into the topics noted above.  *Id.* ¶ 7; Pl.'s Fee Motion at 3.  The FBI's alleged failure to adequately process those requests ultimately led Rosenfeld to file three lawsuits over the documents, the details of which are set forth in *Rosenfeld v. U.S. Dept. of Justice*, 57 F.3d 803 (9th Cir. 1995).  All three suits challenged the government's decision not to release certain responsive documents to Plaintiff under FOIA.[1]  *Id*. at 806.  A settlement agreement was executed by the parties on January 12, 1996, and was entered as an order of the Court on May 22, 1996, settling all three suits.  That order specified that the court would "retain jurisdiction over these cases in order to

---

[1]  C-85-2247 MHP concerned Plaintiff's challenges to withheld documents relating to individuals and entities involved in the Free Speech Movement ("FSM") and anti-war movements of the 1960's, C-85-1709 MHP concerned challenges to the FBI's decision not to release information related to "special operations" conducted as part of the FBI's Counter-Intelligence Program (COINTELPRO), and C-90-3576-MHP (the instant suit) also challenged the withholding of COINTELPRO and FSM related files.  *See Id.* at 806.  *See also Rosenfeld v. U.S. Dept. of Justice*, C 07-3240 MHP, 2010 WL 3448517 (N.D. Cal. Sept. 1, 2010) (describing content of these three cases).

United States District Court

For the Northern District of California

1    enforce and administer the terms of the agreement."  Order Granting Joint Motion for Entry of

2    Settlement Agreement (Docket No. 82) at 2.

3         Pursuant to the settlement agreement, the FBI agreed to "reprocess and release the

4    documents at issue . . . within a total of twelve (12) months of settlement."  Settlement Agreement ¶

5    6 (reprinted in Docket No. 161, Ex. A).  The agreement also preserved Rosenfeld's "right to seek

6    attorney fees and costs for all work done in these cases, including work done in connection with the

7    fee negotiations . . . and all subsequent phases of the litigation."  *Id*. ¶ 7(b).  Through an addendum

8    to the settlement agreement, the parties agreed that Rosenfeld would receive $560,000.00 in

9    "reasonable attorney fees and other litigation costs reasonably incurred at the district court level,

10   upon appeal, and through settlement."  Further Settlement Agreement ¶ 2 (reprinted in Docket No.

11   161, Ex. B), December 18, 1996.  Thus, all costs and fees for the three lawsuits, up to and including

12   settlement, have been paid.

13        Following execution of the settlement agreement, "[t]he FBI released much of what it

14   claimed were the responsive records as required . . . within the one year period."  Pl.'s Fee Motion at

15   4.  In fact, over the course of this set of cases, the FBI proffers that it released more than 300,000

16   pages of responsive material to Rosenfeld and expended in excess of one million dollars processing

17   these FOIA requests.  Third Declaration of David M. Hardy ("Hardy Decl.") (Docket No. 140) ¶¶ 5-

18   10.

19        On September 25, 2006, ten years after the execution of the settlement agreement, Rosenfeld

20   filed a motion challenging the FBI's compliance with the agreement.  *See* Notice of Plaintiff's

21   Challenges Regarding Defendants' Failure to Comply with Settlement Agreement (Docket No. 89).

22   As a result, the court issued an order directing the FBI to conduct additional searches for responsive

23   records.  *See* Order by Judge Elizabeth D. Laporte RE Plaintiff's Challenges Regarding Compliance

24   with Settlement Agreement as Modified (Docket No. 108).  Plaintiff also advanced a challenge to

25   the FBI's production of "abstract cards"[2] that was initially rejected by Judge Laporte as too onerous.

26   _____

27        [2] Abstract cards are manually typed two to three sentence summaries of documents which
     were generated by FBI clerical employees between 1921 and 1979.  Declaration of Debra O'Clair

28   (Docket No. 116-1) ¶¶ 5-7.  The FBI used abstract cards to distinguish between documents in a case,
     and to assign file numbers to incoming documents in sequential order within a case, without having

*See id.* at § 5.  However, after a hearing on the matter, the court issued a second order setting out a protocol for locating and producing the abstract cards at issue.  *See* Notice of Renewed Challenge (Docket No. 112); Order as Modified on Plaintiff's Renewed Challenge (Docket No. 126). Importantly, the FBI acknowledges that Rosenfeld "substantially prevailed" in litigating these two challenges.  *See* Defendant's Opposition to Plaintiff's Motion for Further Attorney Fees (Docket No. 161) ("Def.'s Response Brief") at 1 ("The only additional proceedings in which plaintiff substantially prevailed involved plaintiff's 2006 challenges to the FBI's compliance with the settlement agreement."); *see also id.* at 10 (same).  As a result of these two orders, the FBI released an additional 41,373 records in nineteen rolling productions.  Hardy Decl. ¶ 13.  The final of these rolling document productions occurred on August 4, 2010.  *Id.*  The Plaintiff sought leave of court to file additional challenges to the FBI's compliance with the settlement agreement during a status conference on January 24, 2012, which Judge Laporte denied by an order entered on January 31, 2012.  *See* Order Following Status Conference (Docket No. 148).  Thereafter, final judgment was entered on March 16, 2012, dismissing these consolidated cases with prejudice.  Order Re Defendant's Motion for Entry of Final Judgment (Docket No. 155).

Rosenfeld now moves for an award of attorneys' fees and costs under FOIA's fee-shifting provision, 5 U.S.C. § 552(a)(4)(E), and pursuant to the parties' settlement agreement.  In total, Plaintiff seeks an award of $167,718.32, which includes $21,459 in fees and costs incurred while preparing the instant motion.  *See* Pl.'s Fee Mot. at 19; Plaintiff's Reply Memorandum in Support of Motion for Fees and Costs (Docket No. 162) ("Pl.'s Reply Mem.") at 14.  Pursuant to the settlement agreement, Plaintiff only seeks costs and fees incurred for post-settlement work.  *See* Decl. of James Wheaton (Docket No. 157-1), ¶¶ 3-5.

The FBI objects to Rosenfeld's fee motion and argues that attorneys' fees and costs should not be awarded in the amount requested for three principle reasons: (1) that the terms of the settlement agreement preclude recovery of costs and fees outside of work performed in "additional proceedings," (2) that Rosenfeld is not entitled to an award because the FBI made good faith efforts

_____

to retrieve the original document from storage.  *Id.*

1   to respond to his FOIA requests, and (3) that his requested award amount greatly exceeds what is

2   reasonable in a case of this type.  *See* Def.'s Response Brief.

## II.    DISCUSSION

A.    Legal Standard

5          The fee-shifting provision of FOIA states that a "court may assess against the United States

6   reasonable attorney fees and other litigation costs reasonably incurred in any case under this section

7   in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  "Substantially

8   prevailed" in this context means that a "complainant has obtained relief through either . . . a judicial

9   order, or an enforceable written agreement or consent decree; or . . . a voluntary or unilateral change

10  in position by the agency, if the complainant's claim is not insubstantial."  *Id.*  Fee and cost awards

11  are not automatically awarded to a prevailing party  under FOIA.  *See Church of Scientology of*

12  *California v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983) ("*Church of Scientology*").

13  Rather, a plaintiff "must present convincing evidence" that they are both *eligible* for an award of

14  attorney's fees and that they are *entitled* to such an award.  *See Id* at 489, 492.  *See also Long v. U.S.*

15  *I.R.S.*, 932 F.2d 1309, 1313 (9th Cir. 1991) ("In order to receive an award of fees, a prevailing party

16  in a FOIA action must demonstrate both eligibility for and entitlement to such a recovery.").

17          The Ninth Circuit has crafted a two-step process for determining whether a party may be

18  awarded fees and costs under § 552(a)(4)(E).  To be *eligible* for an award, a party must show both

19  that "(1) the filing of the action could reasonably have been regarded as *necessary* to obtain the

20  information," and that "(2) the filing of the action had a *substantial causative* effect on the delivery

21  of the information."  *Church of Scientology*, 700 F.2d at 489 (emphasis in original).

22          Once a court deems a party eligible to recover fees and costs, it then exercises its "discretion

23  to determine whether the plaintiff is *entitled* to fees."  *Oregon Natural Desert Ass'n v. Locke*, 572

24  F.3d 610, 614 (9th Cir. 2009) (emphasis added).  Entitlement to an award of fees under FOIA is a

25  separate analysis; a "determination of eligibility does not automatically entitle the plaintiff to

26  attorney's fees."  *Church of Scientology* at 489.  To determine whether a party is entitled to fees, a

27  court must evaluate a number of equitable factors, including (1) the public benefit resulting from

28  FOIA disclosures in the case, (2) the commercial benefit to the party resulting from the disclosures,

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

(3) the nature of the party's interest in the disclosed records, and (4) whether the government's rationale for withholding the records had a reasonable basis in law. *Long v. U.S. I.R.S.*, 932 F.2d 1309, 1313 (9th Cir. 1991). These "criteria are not exhaustive, however, and the court may take into consideration whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate." *Long*, 932 F.2d at 1313 (internal quotation marks omitted). The Ninth Circuit has made clear that "[t]he decision to award attorney's fees is left to the sound discretion of the trial court." *Church of Scientology* at 492.

If a court determines that a party is both eligible and entitled to receive fees, that party "must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Long* at 1313-14. If these two figures are reasonable in light of the difficulty of the case and the skill of the attorneys involved, there is a "strong presumption" that their product "represents a reasonable award." *Long* at 1314. A court may revise upward or downward the resulting "lodestar figure"[3] if "factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary."[4] *Id.* However, once a party is deemed both eligible and entitled to fees, "the award must be given

---

[3]  Referring to this method of attorney fee award calculation as the "lodestar" approach may have originated with the Third Circuit's opinion in *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973) ("the amount thus found to constitute reasonable compensation should be the *lodestar* of the court's fee determination") (emphasis added).

[4]  The *Long* court cited with approval twelve factors that may be considered in revising a fee award. They are

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Long* at 1314 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). These factors may, however, overlap to some degree with the "lodestar figure" if they served as a basis for the calculation of that initial amount. *Long* at 1314, Fn. 4.

United States District Court

For the Northern District of California

and the only room for discretion concerns the reasonableness of the amount requested."[5]  *Id*.  A district court awarding fees and costs "should provide a detailed account of how it arrive[d] at appropriate figures for the number of hours reasonably expended and a reasonable hourly rate."  *Id*.

B.     Settlement Agreement

       The FBI challenges as a threshold matter Plaintiff's ability under the terms of the parties' settlement agreement to receive an award of fees and costs as requested in his fee motion. Specifically, the Defendants argue that the settlement agreement's language limits Rosenfeld's potential claim for a fee award only to those "additional proceedings" in any "subsequent phase of litigation" where he "substantially prevailed in that portion of the litigation."  Settlement Agreement ¶ 7(e); Def.'s Response Brief at 8-10.  Both parties acknowledge that Rosenfeld "substantially prevailed" in that portion of this case concerning Plaintiff's 2006 motion challenging the FBI's compliance with the agreement.[6]  *See* Def.'s Response Brief at 1 ("The only additional proceedings in which plaintiff substantially prevailed involved plaintiff's 2006 challenges to the FBI's compliance with the settlement agreement."); *see also id.* at 10 (same).  Thus, the FBI argues that Rosenfeld's fee award should be limited, by the terms of the settlement agreement, to those expenses incurred between Plaintiff's initial challenge on September 25, 2006, and the resolution of that challenge by order of this Court on October 23, 2007.  *Id.* at 10; *see also* Notice of Plaintiff's

_____

       [5]  Additionally, a court may reduce the amount of hours used to calculate a fee award "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  *Chalmers* examined an award of fees and costs under the fee-shifting provision for civil rights actions provided by statute under 42 U.S.C. § 1988.  The Ninth Circuit cites approvingly to *Chalmers* and other § 1988 cases in discussing the metrics of fee-shifting under FOIA.  *See, e.g., Long* at 1314.  Indeed, *Rosenfeld v. United States*, 859 F.2d 717, 724 (9th Cir.1988) explicitly holds that FOIA and § 1988 are "comparable" where awards of attorney's fees are concerned.

       [6]  Plaintiff's 2006 motion challenged the adequacy of the FBI's production of records pursuant to the settlement agreement relating to (1) Ronald Reagan, (2) files located in field offices identified as "Offices of Origin" and "Supporting Offices," (3) individuals alive at the time the settlement agreement was executed, (4) files referred out to other agencies for processing, (5) abstracts and abstract cards, (6) the FBI's COINTELPRO program, and (7) files that could not be located and were placed "on locate."  *See* Order by Judge Elizabeth D. Laporte RE Plaintiff's Challenges Regarding Compliance with Settlement Agreement as Modified (Docket No. 108). Rosenfeld later withdrew his challenge relating to Ronald Reagan.  *Id.* § 1.

1  Challenges Regarding Defendants' Failure to Comply with Settlement Agreement (Docket No. 89);

2  Order as Modified on Plaintiff's Renewed Challenge (Docket No. 126).

3        At issue are fees incurred with respect to other activities.  The FBI argues, *inter alia*, that

4  time spent on such activities as "monitoring/prodding compliance" did not occur within the context

5  of a proceeding (*i.e.* while an objection/notice of noncompliance was pending).

6        Plaintiff argues that fees may be awarded for a broader range of post-settlement activity.  He

7  highlights language in the agreement stating that "this Settlement Agreement does not waive or

8  otherwise affect the possibility of the entitlement of further fees related to these cases."  Pl.'s Reply

9  Brief at 2.  The relevant parts of the agreement read as follows:

10      (b)    The parties agree that this Settlement Agreement does
11          not waive or otherwise affect the possibility of the
        entitlement of *further fees related to these cases*, and
12          that Rosenfeld has not in any way waived his right to
        seek attorneys fees and costs for all work done in these
13          cases, including work done in connection with the fee
        negotiations (and/or fee motion to the court) *and all*
14          *subsequent phases of the litigation* before Magistrate
        Judge Hamilton, the district court or any other tribunal.

15          . . .

16      (e)    Defendants do not concede that Rosenfeld is a prevailing party
17          for any additional proceedings before Magistrate Judge
        Hamilton or the district court.  If Rosenfeld seeks attorney fees
18          or costs for this *subsequent phase of litigation*, he must file a
        supplemental fee request in the district court and demonstrate
        that he substantially prevailed in *that portion of the litigation*.

19

20  Settlement Agreement ¶¶ 7(b), 7(e) (emphasis added).  This language is substantially repeated in

21  paragraph four of the addendum to the settlement agreement.  *See* Further Settlement Agreement ¶ 4.

22        By its terms it is clear that this settlement agreement "does not waive or otherwise affect the

23  possibility of the entitlement of *further fees related to these cases*."  Settlement Agreement ¶ 7(b)

24  (emphasis added); *see also* Further Settlement Agreement ¶ 2 (same).  Both agreements expressly

25  preserve Plaintiff's right to seek fees for "all subsequent phases of the litigation." *Id.*  It contains no

26  limit other than requiring that further fees relate to the cases which are the subject of the Settlement

27  Agreement and Further Settlement Agreement and that the Plaintiff substantially prevail in that

28  portion of the litigation.  Further Settlement Agreement ¶ 4.  By referring to the substantially prevail

standard embedded in FOIA, 5 U.S.C. § 552(a)(4)(E), the agreements effectively incorporate the eligibility and entitlement test for fee awards applicable under FOIA.

C.       Eligibility for Attorneys' Fees

As noted above, both parties acknowledge that Rosenfeld "substantially prevailed" in the portion of this case concerning Plaintiff's 2006 motion challenging the FBI's compliance with the settlement agreement. *See* Def.'s Response Brief at 1 ("The only additional proceedings in which plaintiff substantially prevailed involved plaintiff's 2006 challenges to the FBI's compliance with the settlement agreement."); *id.* at 10 (same); Pl.'s Reply Brief at 3-4 (stating that Plaintiff substantially prevailed on these challenges). The record in this case supports this conclusion. *See* Order by Judge Elizabeth D. Laporte Re Plaintiff's Challenges Regarding Compliance with Settlement Agreement as Modified (Docket No. 108); Order as Modified on Plaintiff's Renewed Challenge (Docket No. 126).

Plaintiff does not explicitly address whether or not he substantially prevailed on any matters that took place outside the 2006 motion.[7] His discussion of eligibility for an award of fees and costs under 5 U.S.C. § 552(a)(4)(E) is limited to the 2006 challenges. *See* Pl.'s Reply Brief at 3-4. After the adoption of the settlement agreement on May 22, 1996, the only other significant periods of activity on this docket concern routine conferences on case management, settlement discussions that occurred periodically throughout 2011 and 2012, and the FBI's motion for an entry of judgment (Docket No. 139), which was granted by this Court on March 16, 2012 (Docket No. 155). The settlement discussions in 2011 and 2012 occurred *after* the "FBI substantially completed all the work required in searching for, processing and releasing or withholding responsive records." *See* Request by Plaintiff for CMC (Docket No. 135) at 3. Plaintiff does not allege that latter settlement discussions yielded additional documents.

Prior to the entry of judgment, plaintiff filed a motion requesting a case management conference, seeking leave to assert further challenges to the FBI's compliance with the settlement

_____

[7] The period on the docket sheet concerning Plaintiff's 2006 FOIA challenges commenced with Plaintiff's September 25, 2006, Notice of Plaintiff's Challenges Regarding Defendants' Failure to Comply with Settlement Agreement (Docket No. 89) and ended with Judge Laporte's October 23, 2007, Order as Modified on Plaintiff's Renewed Challenge (Docket No. 126)).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  agreement.  *See* Request by Plaintiff for Case Management Conference (Docket No. 135).

2  Magistrate Judge Laporte denied plaintiff's request to file further challenges, and directed the FBI to

3  file its motion for entry of final judgment before Judge Chen.  *See* minute order in *Rosenfeld v. U.S.*

4  *Department of Justice*, No. C 85-2247-MHP/EL (Docket No. 169).

5        It is the Plaintiff's burden to present convincing evidence of his eligibility for a fee award

6  under FOIA.  *See Church of Scientology of California*, 700 F.2d at 489 (plaintiff must "must present

7  convincing evidence" that they are both *eligible* for an award of attorney's fees and that they are

8  *entitled* to such an award); *Long v. U.S. I.R.S.*, 932 F.2d at 1313 (same).  Apart from the 2006

9  challenge, Rosenfeld did not substantially prevail on any other matter.  The Court thus limits any

10  potential award to those costs and fees incurred as a result of the 2006 challenge, plus any fees for

11  attorney time reasonably expended in preparing this fee motion.  *See Brown v. Sullivan*, 916 F.2d

12  492, 497 (9th Cir. 1990) ("The law is well established that, when fees are available to the prevailing

13  party, that party may also be awarded fees on fees, i.e., the reasonable expenses incurred in the

14  recovery of its original costs and fees.") (quoting *General Fed'n of Women's Clubs v. Iron Gate Inn,*

15  *Inc.*, 537 A.2d 1123, 1129-1130 (D.C. App.1988)).

16  D.     Entitlement to Attorneys' Fees

17        Having determined that Rosenfeld is eligible to receive a fee award, the Court must next

18  decide whether he is also entitled to the award.  The decision as to whether a party is entitled to an

19  award of fees and costs "is left to the discretion of the district court."  *Church of Scientology* at 489.

20  Courts look to the four factors described in *Long* as a guide to exercising their discretion, keeping in

21  mind "the basic policy of the FOIA to encourage the maximum feasible public access to government

22  information."  *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977); *see*

23  *also Church of Scientology* at 494.

24        Turning to the first *Long* factor – an examination of the public benefit resulting from FOIA

25  disclosures in this case – the Court notes that the FBI fails to respond to Plaintiff's contention that

26  this factor weighs in favor of a fee award.  "In most circumstances, failure to respond in an

27  opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment

28  in regard to the uncontested issue."  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F.

United States District Court

For the Northern District of California

1   Supp. 2d 1125, 1132 (C.D. Cal. 2011) (citing *Sportscare of America, P.C. v. Multiplan, Inc*., No.

2   2:10-4414, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011)).  In any event, the Ninth Circuit has

3   characterized cases where an investigative reporter obtains information through FOIA for the

4   purpose of disseminating it to the public as conferring a "public benefit."  *See Church of Scientology*

5   *of California*, 700 F.2d at 492 ("Under the first criterion a court would ordinarily award fees, for

6   example, where a newsman was seeking information to be used in a publication . . .) (citing S.Rep.

7   No. 93-854, 93rd Cong. 2nd Sess. 19 (1974)).  As Rosenfeld's FOIA requests in this case were

8   undertaken for the express purpose of disseminating information about FBI activities during the

9   Cold War via the news media, the Court finds that this factor weighs in favor of Plaintiff's

10   entitlement to fees and costs.

11        The next two factors – the commercial benefit to the party resulting from the disclosures and

12   the nature of the party's interest in the disclosed records – are closely related and often assessed

13   together.  *See Church of Scientology* at 494; *Tax Analysts v. U.S. Dept. of Justice*, 965 F.2d 1092,

14   1095 (D.C. Cir. 1992).  As a general matter, "if either commercial benefit will inure to the plaintiff

15   from the information" obtained, or "plaintiff intends to protect a private interest" through the use of

16   FOIA, "an award of attorney's fees is not recoverable."  *Church of Scientology* at 494.  In contrast,

17   "where plaintiff is indigent or a nonprofit public interest group, an award of attorney's fees furthers

18   the FOIA policy of expanding access to government information."  *Id*.  More specific to the case at

19   hand, Ninth Circuit precedent in this area teaches that courts assessing these two factors "[sh]ould

20   generally award fees if the complainant's interest in the information sought was scholarly or

21   journalistic or public-oriented."  *Long* at 1316 (quoting *Church of Scientology* at 493, which quotes

22   in turn  S.Rep. No. 854, 93d Cong., 2d Sess. at 19 (1974)).  The FBI's opposition brief fails to

23   present a rebuttal argument to Rosenfeld's assertion that these two factors weigh in favor of a fee

24   award.

25        In any event, as the facts described above note, Rosenfeld is a professional journalist who

26   made his underlying FOIA request to find supporting materials for a book he is readying for

27   publication.  Third Decl. of Seth Rosenfeld ¶ 3.  In certain circumstances where an author and

28   journalist has a financial incentive to use FOIA to acquire source documents for use in a book,

courts have declined to find an entitlement to attorney's fees. *See e.g. Morley v. U.S.C.I.A.*, 828 F. Supp. 2d 257 (D.D.C. 2011). However, the "mere intention to publish a book does not necessarily mean that the nature of the plaintiff's interest is purely commercial." *Davy v. C.I.A.*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) (internal quotation marks omitted). "Surely," the *Davy* court held, "every journalist or scholar may hope to earn a living plying his or her trade, but that alone cannot be sufficient to preclude an award of attorney's fees under FOIA." *Id.* The record does not show, nor do the parties contend, that Rosenfeld sought to obtain a pecuniary advantage through the use of FOIA. Nor is there any evidence that Rosenfeld had alternative means of obtaining the records. The Court finds that both the commercial benefit and plaintiff's interest factors in *Long* weigh in favor of Rosenfeld's entitlement to a fee award.

The fourth factor – whether the government's rationale for withholding the records had a reasonable basis in law – asks the court to consider whether an agency's administrative denial of a FOIA request had "a colorable basis in law" or whether the denial "appeared to be merely to avoid embarrassment or to frustrate the requester." *Church of Scientology of California* at 492 Fn. 6 (citing S.Rep. No. 93-854, 93rd Cong. 2nd Sess. 19 (1974)). An agency denying a FOIA request "must be careful not to read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester. To conclude otherwise would frustrate the central purpose of the Act." *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985). "[T]he reasonable basis in law factor is . . . not dispositive, and can be outweighed by the public benefit and commercial benefit to the plaintiff factors." *Am. Civil Liberties Union v. U.S. Dept. of Homeland Sec.*, 810 F. Supp. 2d 267, 277 (D.D.C. 2011) (internal citations and quotations omitted).

The FBI argues that this factor weighs against an award of attorneys' fees here because "the record establishes that the actions taken by the FBI in response to plaintiff's FOIA requests had a reasonable basis in law." Def.'s Response Brief at 12. In opposition, Rosenfeld describes the FBI's prior legal positions supporting its decision to withhold documents as "unreasonable and obdurate." Pl.'s Reply Br. at 6. Both sides in this case point mainly to excerpts from a hearing transcripts on

United States District Court

For the Northern District of California

1  Plaintiff's 2006 challenges to support their positions.  A review of the transcripts and the larger

2  record in this case reveals that this factor weighs, on balance, in favor of Rosenfeld.

3          First, on September 11, 2007, Judge Laporte heard Rosenfeld's renewed challenge regarding

4  the FBI's compliance with the settlement agreement (Docket No. 112), and a transcript of that

5  proceeding was entered into the record (Transcript of Proceedings, Docket No. 120).  The transcript

6  reveals that the FBI asserted an unreasonable legal argument in support of its position that it did not

7  or could not produce certain "abstract cards" requested by Rosenfeld.  The FBI argued that the cards

8  at issue were filed "according to a NARA file locator system that does not correspond in any way to

9  the information contained within the boxes."  Transcript of Proceedings at 5:1-3.  However, the

10  record indicates that Judge Laporte seemed to reject that argument as inaccurate.[8]

11          Second, Plaintiff claims that the FBI directed "Rosenfeld . . . to make a separate FOIA

12  request to each [field] office" for requested documents, despite the fact that their 1996 settlement

13  agreement explicitly barred Rosenfeld from doing so.  Pl.'s Reply Br. at 7.  The settlement

14  agreement states that Rosenfeld "waives his right to file any future request under [FOIA] for the

15  records at issue," Settlement Agreement at ¶ 8, and as such prohibits him from acting in the manner

16  allegedly requested by the FBI.  The FBI's Opposition Brief to Plaintiff's 2006 Challenges (Docket

17  No. 99) does suggest that Plaintiff was directed to contact specific FBI field divisions to process his

18  requests.  *See id.* at 7-8.  However, it is not clear that the brief addresses the same FOIA requests at

19  issue in the 2006 challenges.  The brief specifically mentions "Ronald Reagan" related documents,

20  and requests related to him would fall outside the scope of the parties' settlement agreement.  *See*

21  Settlement Agreement ¶ 9 (characterizing "Ronald Reagan" FOIA request as a "new" request "not

22

23          [8] The following excerpts from the transcript of proceedings record Judge Laporte's
   skepticism as to this argument:

24          THE COURT:  Well, I read the declaration, and it's very hard to
               follow.  But you read their reply papers, they seem to suggest there is
25             a way of correlating.  (5:5-7);

26          THE COURT:  And that's what I'm trying to get at.  If you submit a
               number of file numbers, I think maybe you could search."  (7:10-12);
27
            THE COURT: . . . they are time consuming and difficult to search for,
28             but I'm not convinced they are impossible."  (8:16-17).

United States District Court

For the Northern District of California

1  covered by this agreement).  Judge Laporte seems to have rejected both parties' positions and

2  ordered a compromise remedy to resolve the challenge.  Her February 6, 2007 order (Docket No.

3  108) directed Rosenfeld to "submit to the FBI not more than five specified field offices" to be

4  searched by the FBI for responsive documents.  *See id.* at 2.  While a compromise result such as this

5  does not weigh strongly in either parties' favor, it does cut against the Defendants' argument that the

6  FBI "has at all relevant times responded reasonably to plaintiff's enormously burdensome document

7  requests."  Defs.' Opposition Brief at 14.

8      Finally, Plaintiff cites as an example of the FBI's unreasonable rationale for withholding

9  requested FOIA documents the fact that the FBI did not refer 6,184 pages to Department of the

10  Army for processing until after it had closed Rosenfeld's FOIA request.  Pl.'s Reply Br. at 7.  The

11  FBI readily admits this as true in their Opposition Brief to Plaintiff's 2006 Challenges.  *See id.* at 11.

12  Administrative inefficiency of this type weighs against the government on the fourth *Long* factor.

13  As the court observed in *Miller v. U.S. Dept. of State*, 779 F.2d 1378, 1390 (8th Cir. 1985),

14  "[w]hile these reasons are plausible, and we do not find them to be
   evidence of bad faith on the part of the Department, they are practical

15  explanations, not reasonable legal bases. The FOIA does not contain a
   statutory exception for administrative inefficiency. When a private

16  citizen is obliged to seek legal services in order to wrest from the
   government information which the government had no legal reason to

17  withhold from him, he is entitled under the Act to be reimbursed for
   the cost to which he has been put."

18

19      In sum, the record evidence on this factor weighs, on balance, in favor of Rosenfeld.  The

20  FBI has failed to demonstrate that it had "a colorable basis in law" for declining to produce the

21  records requested by Plaintiff under FOIA.  Combined with the weight of the other three *Long*

22  factors, the Court finds that Rosenfeld has sufficiently demonstrated his entitled to an award of

23  attorneys' fees under FOIA.

24  E.    Reasonableness of Amount Requested

25      Having concluded that "the plaintiff is both eligible for and entitled to recover fees, the

26  award must be given and the only room for discretion concerns the reasonableness of the amount

27  requested."  *Long* at 1314.  In assessing the reasonableness of the amount requested, the Court turns

28  to the  plaintiff's fee bill and scrutinizes the "reasonableness of (a) the number of hours expended

**United States District Court**
For the Northern District of California

1   and (b) the hourly fee claimed.  If these two figures are reasonable, then there is a 'strong

2   presumption' that their product, the lodestar figure, represents a reasonable award." *Id.* at 1313-14

3   (internal quotation marks omitted).  The Ninth Circuit has instructed district courts to "provide a

4   detailed account of how it arrives at appropriate figures for the number of hours reasonably

5   expended and a reasonable hourly rate." *Id.* (internal citations and quotations omitted).

6          1.   <u>Number of Hours Expended</u>

7          For the purposes of calculating the 'lodestar' figure, the Court has discretion in determining

8   the number of hours reasonably expended on a case. *See Chalmers v. City of Los Angeles*, 796 F.2d

9   1221; *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (stating that a district court has

10  discretion in determining the amount of a fee award which is "appropriate in view of the district

11  court's superior understanding of the litigation and the desirability of avoiding frequent appellate

12  review of what essentially are factual matters").  The fee applicant bears the burden of

13  "documenting the appropriate hours expended" in the litigation and therefore must "submit evidence

14  supporting the hours worked." *Hensley*, 461 U.S. at 433, 437.  Reasonably expended time is

15  generally time that "could reasonably have been billed to a private client." *Moreno v. City of*

16  *Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  To this end, the applicant must exercise "sound

17  billing judgment" regarding the number of hours worked, and a court should  exclude from a fee

18  applicant's initial fee calculation hours that were not "reasonably expended," such as those incurred

19  from overstaffing, or "hours that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461

20  U.S. at 433.

21          Plaintiff submits five declarations supporting his proposal for the number of hours

22  reasonably expended on this case.  *See* Docket No. 157, Exs. 1-3, Docket No. 163 and 164.

23  The information contained in the declarations can be summarized as follows:

24  ///

25  ///

26  ///

27  ///

28  ///

15

| Charges Billed from March 1, 2006 through October 23, 2007 | | | |
|---|---|---|---|
| Attorney/Staff Member | Hours Worked | Hourly Rate | Total |
| James Wheaton | 88.05 | $500 | $44,025.00 |
| David Greene | 94.96 | $425-460.00 | $41,547.74 |
| Pondra Perkins | 26.85 | $200.00 | $5,370.00 |
| Student Interns | 4 | $100.00 | $400 |
| **Subtotal** | **213.86** | | **$91,342.74** |
| Charges Billed from October 24, 2007 through October 27, 2010 | | | |
| James Wheaton | 34.35 * | $600.00 | $20,610.00 |
| David Greene | 2.68 * | $475-500 | $1,299.75 |
| Student Interns | 29 | $100.00 | $2,900.00 |
| **Subtotal** | **66.03** | | **$24,809.75** |
| Charges Billed from March 14, 2012 to July 12, 2012 | | | |
| James Wheaton | 26.95 | $700.00 | $18,865.00 |
| David Greene | 43.7 | $550.00 | $24,035.00 |
| Lowell Chow | 32.95 | $200.00 | $6,590.00 |
| **Subtotal** | **108.8** | | **$49,490.00** |
| **Grand Total (All Fees & Hours)** | **388.69** | | **$165,642.49** |

The hourly figures with asterisks above have been adjusted in line with Plaintiff's Reply Brief, where Plaintiff acknowledged that the initial time records accompanying his fee motion contained a "data error," resulting in a deduction of 15.85 hours from Mr. Wheaton's figures. Pl.'s Reply Brief at 9. Plaintiff discovered a similar error in his time records related to Mr. Greene and reduced his total hours in this motion by approximately 5 hours. Pl.'s Reply Brief at 12 ("entry for David Greene of 4.81 hours . . . pertains to a different case and should not have been included").

Upon reviewing the time records submitted, the Court finds that the time claimed for litigating this case is higher than what should have been "reasonably expended." There was no material activity in this case prior to Plaintiff's filing his challenges on September 25, 2006, but Plaintiff's billing data extends back approximately seven months before this to March 1, 2006. While courts in the Ninth Circuit have allowed attorney fee awards to include time spent preparing a

United States District Court

For the Northern District of California

complaint,[9] the record does not establish how much of this early time was devoted specifically to the preparation of the September 25, 2006 challenge.  Likewise, although the court issued is final ruling on the 2006 challenges on October 23, 2007, Plaintiff's have included in their declarations time records extending into October of 2010.

Rosenfeld argues that hours ought to be included in the fee award for both the period extending before and the period coming after litigation on Rosenfeld's 2006 challenges because they consist of "time and effort to monitor and prod compliance" with the settlement agreement and rulings on the 2006 challenges.  *See* Declaration of James Wheaton in Support of Plaintiff's Motion for [an] Award of Fees and Costs (Docket No. 157, Ex. A) ("Wheaton Decl.") ¶¶ 3,4,6.  In *Prison Legal News v. Schwarzenegger*, the Ninth Circuit expressly affirmed the propriety of including hours for monitoring compliance with a settlement agreement in fee awards for certain civil rights cases.  *Id.* 608 F.3d 446, 452 (9th Cir. 2010) ("We therefore hold that PLN may recover attorneys' fees under § 1988 for monitoring the state officials' compliance with the parties' settlement agreement."); *see also Balla v. Idaho*, 677 F.3d 910 (9th Cir. 2012) (permitting monitoring to be included in attorneys' fees award in a class action under the Prison Litigation Reform Act).  At least one court in this district has extended *Prison Legal News's* holding into other areas of law.  *See K.C. ex rel. Erica C. v. Torlakson*, C 05-4077 MMC, 2012 WL 1380243 (N.D. Cal. Apr. 20, 2012) (extending *Prison Legal News* to settlement agreement in an Americans with Disabilities Act case, but declining fee award for lack of jurisdiction).

However, as of yet, no court in the Ninth Circuit has extended *Prison Legal News* to cover costs accrued monitoring a FOIA settlement agreement.[10]  Plaintiff cites no authority for the proposition that "monitoring" compliance with prior court rulings on a FOIA matter is recoverable under 5 U.S.C. § 552, especially in the absence of a contractual provision so stipulating.  In both

---

[9]  *See e.g. Cortes v. Metro. Life Ins. Co.*, 380 F. Supp. 2d 1125, 1132 (C.D. Cal. 2005); *Trustees of Bakery & Confectionery W. Conference Dental Fund v. Neldam's Danish Bakery Inc.*, C 07-5095 SI, 2008 WL 1743478 (N.D. Cal. Apr. 15, 2008).

[10]  The FBI's citation to *Martin v. Hadix*, 527 U.S. 343 (1999), is inapplicable to the matter at issue here.  In *Hadix*, the Supreme Court read the Prison Litigation Reform Act of 1995 as limiting the hourly rate of pay available in an attorney fee award.  The Court did not prohibit time spent monitoring from the calculation of fee awards.

United States District Court

For the Northern District of California

*Prison Legal News* and *Balla v. Idaho*, either the court or the parties expressly provided that respective plaintiffs' counsel would monitor defendants compliance with the court's prior judgments or the parties' settlement agreement. *See Prison Legal News*, 608 F.3d at 452; *Balla v. Idaho*, 677 F.3d at 918.

Plaintiff cites no provision in the parties' settlement agreement allowing for "monitoring." Rosenfeld has not argued that the parties' settlement agreement *expressly* provided for the recovery of fees and costs incurred as a result of monitoring compliance with the agreement. While Plaintiff argues somewhat opaquely that the "entitlement to further fees related to these cases" language in the settlement agreements is "similar to" the language at issue in *Prison Legal News* that allowed for monitoring, he has not argued that this agreement actually *does* permit monitoring to be included in a fee award. *See* Pl.'s Reply Br. at 3:4-12. Indeed, the fact that the "related to" language is prefaced by a clause stating "[t]he parties agree that this Settlement Agreement does not waive *or otherwise affect* the possibility of the entitlement to further fees related to these cases, . . ." suggests that this language operates merely as a non-waiver of a right secured by § 552 of FOIA, not the grant of a wholly new right to recover fees for monitoring. *See* Settlement Agreement ¶ 7(b) (emphasis added).

In any event, with regard to "monitoring" that occurred after the court resolved Plaintiff's 2006 challenges on October 23, 2007, Plaintiff cannot claim that he "substantially prevailed" on these monitoring matters within the meaning of FOIA's fee-shifting provision. 5 U.S.C. § 552(a)(4)(E). Plaintiff has not demonstrated that *e.g.*, he obtained additional documents as a result of the monitoring. The Court finds that Rosenfeld has not carried his burden in showing that fees and costs associated with "monitoring" are recoverable under FOIA or the Settlement Agreement. As such, Plaintiff's initial lodestar figures shall be reduced to eliminate unnecessary hours claimed for monitoring.

          a.    <u>Phase I</u>

For those hours billed between March 1, 2006, and October 23, 2007, denominated by Plaintiff as "Phase I," Rosenfeld claims that "the vast majority of time in Phase I was spent

preparing the papers that were filed in the two challenges."  Pl.'s Reply Br. at 13.[11]  This component

of Plaintiff's motion for a fee award also contains time spent litigating Rosenfeld's 2006 challenges.

The Court agrees that the "vast majority," but not all of this time ought to be included in the

lodestar.  In reviewing Plaintiff's Phase I billing records, it appears that approximately ten percent of

the hours claimed for this period cannot be attributed to time spent actually litigating the 2006

challenge, but were rather spent monitoring Defendants FOIA compliance.  *See e.g.* Wheaton Decl.

Ex. B at 1[12] (recording David Greene's time entries for "conference with client re: case status and

strategy" and "telephone conference with client; read and review correspondence from DOJ; reply to

DOJ," which occurred approximately five months before compliance challenge was filed, and which

appear related to monitoring of Defendant's compliance with the Settlement Agreement); Wheaton

Decl. Ex. C at 3 (recording James Wheaton's time entries for "FBI telephone conference" and

"wechsler [Justice Dept. attorney] letter" on May 15, 2007, more than three months after Judge

Laporte issued her first order on Plaintiff's challenges, and apparently undertaken to monitor

Defendants' compliance with the court's orders).  Thus, a ten percent reduction shall be taken from

---

[11] Plaintiff's Reply Brief characterizes the time billed before the filing of the 2006 challenges as mostly spent preparing that complaint.  *See* Pl's Reply Brief pp. 12-13:

> "The first phase of the litigation involved numerous tasks, all directly related to the challenge litigation.  After the FBI declared its processing of the FOIA requests completed on February 28, 2006, Rosenfeld's counsel reviewed the numerous record productions and correspondence from the past ten years to identify whether the FBI had in fact complied with the Settlement Agreement."  (Reply 12:15-19)

> "Nevertheless, the vast majority of time in Phase I was spent preparing the papers that were filed in the two challenges, including a pleading opposing the FBI's requested extension of time to respond, reviewing the FBI's opposition papers, preparing for and appearing at the hearings, and fighting with the FBI over the form and content of the proposed orders."  (Reply 13:2-5)

Plaintiff's declarations, however, make no explicit statement confirming these assertions.

[12] These time records reflect that Plaintiff did not commence work on his challenge-related pleadings until around August 16, 2006, approximately three and one half months after the first time entry submitted for inclusion in the lodestar.

1    this phase to compensate for time spent by Plaintiff's attorneys on monitoring rather than litigating

2    the 2006 challenge.

3             b.    Phase II

4             A more significant reduction is warranted for attorney time claimed between October 24,

5    2007, and October 27, 2010, denominated by Plaintiff as "Phase II."  Plaintiff's declarations confirm

6    that most of the hours claimed in "Phase II" were spent on monitoring activities.  James Wheaton's

7    initial declaration in support of Plaintiff's fee motion (Docket 157, Ex. 1) states that "[t]he second

8    phase consists of time and effort to monitor and prod compliance with the Court's orders granting

9    the challenges and ordering a series of specific actions and searches by the FBI.."  *Id.* ¶ 4.

10   Wheaton's declaration in support of Plaintiff's Reply Brief reiterates the fact that time spent on

11   "Phase II" was primarily for monitoring the FBI's compliance with the court's orders.  *See* Second

12   Declaration of James Wheaton (Docket No. 163) ¶ 10 ("The second phase of the litigation, in

13   particular, involved mostly reviewing the records and status reports produced by the FBI and

14   monitoring the FBI's compliance with Magistrate Judge Laporte's orders, and various

15   correspondence with the FBI regarding the status of their compliance with those orders.").

16            As noted above, Plaintiff cannot recover fees and costs associated with monitoring activities

17   under the parties' Settlement Agreement.  Plaintiff has not otherwise shown that these time entries

18   correspond to a phase of this litigation in which he "substantially prevailed," and as such cannot

19   seek to recover associated attorney fees and other litigation costs under § 552.  5 U.S.C. §

20   552(a)(4)(E).  The Court will, therefore, eliminate all hours reported in "Phase II" from inclusion in

21   the lodestar.

22            c.    Billing Transparency and Judgment

23            Defendants also challenge the cursory nature of Plaintiff's billing records.  *See e.g.* Wheaton

24   Decl. Ex. B (billing time for multiple e-mails with the subject "re: thanks").  Although "[p]laintiff's

25   counsel . . . is not required to record in great detail how each minute of his time was expended," he

26   should at  least "identify the general subject matter of his time expenditures."  *San Francisco*

27   *Baykeeper v. W. Bay Sanitary Dist.*, C-09-5676 EMC, 2011 WL 6012936 at *11 (N.D. Cal. Dec. 1,

28   2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); internal quotations omitted).  The

United States District Court
For the Northern District of California

vagueness of certain documents included in Plaintiff's time records make it difficult for this Court to assess whether the time claimed was reasonably spent on this matter, or whether it might be part of the same "data error" that lead Plaintiff to reduce the number of claimed hours in his Reply Brief.[13] "Where the documentation" supporting a fee award is questionable or inadequate, "the district court is free to reduce an applicant's . . . award accordingly." *Id.* at 433.[14]

As to the accuracy of Plaintiff's billing records, the Court notes that neither Plaintiff's fee motion nor his billing records demonstrate that he reduced claimed hours to account for inefficiency, waste, and duplication. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked . . . " *Id.* at 437.

Having failed to demonstrate and document in the record that he exercised appropriate billing judgment to eliminate inefficiencies, and coupled with the lack of billing detail contained in certain documents, the Court will adjust Plaintiff's final fee award downward by ten percent to compensate for these shortcomings. *See In re Smith*, 586 F.3d 1169, 1174 (9th Cir. 2009) ("We have recognized that . . . the district court has the authority to make across-the-board percentage cuts . . . in the number of hours claimed . . . as a practical means of trimming the fat from a fee application.") (internal quotation marks and citations omitted); *Moreno v. City of Sacramento*, 534

---

[13] To be sure, most of Plaintiff's billing records adequately document time expenditures, and are sufficiently detailed to allow the Court to identify how each attorney spent their time and determine each entry's relevance to the case. More than not, Plaintiff has provided records that identify the type of work conducted, the document worked on, and when applicable the names of parties met.

[14] The Court notes that the vagueness is confined to Mr. Wheaton's time records who billed somewhere between 40-45% of the total hours in the lodestar. While most of the entries clearly relate to the case (*e.g.* entries titled "email re: Rosenfeld" or "email re: DOJ letters"), no further specificity is given. It appears that between 10-15% of his time entries cannot be said to clearly relate to this case.

1  F.3d 1106, 1112 (9th Cir. 2008) (a "district court can impose a small reduction, no greater than 10

2  percent – a "haircut" – based on its exercise of discretion and without a more specific explanation").

3          The government's remaining objections – that time spent reviewing FOIA documents should

4  be disallowed, as should duplicative or unnecessary time, and time spent on "clerical tasks" – are

5  meritless.  Regarding time spent reviewing FOIA documents, the FBI has failed to provide any

6  evidence that this time spent by Plaintiff's attorneys was not for the purpose of litigating this case.

7  *See* Pl.'s Reply Brief at 10 (describing time at issue as spent to ensure that the agency had actually

8  produced the records required under the agreement, or to prepare the 2006 challenge papers).

9  Regarding the inclusion of duplicative or unnecessary billed time, the FBI advances only general

10  allegations that Plaintiff's counsel should not have billed for the appearance of two attorneys at

11  "various court hearings and meetings."  *See* Def.'s Response Brief at 17.  As this Court noted last

12  year in *Stonebrae v. Toll Bros*, "[w]hile it is not uncommon to have co-counsel in litigation, and fees

13  are commonly awarded to multiple attorneys, counsel seeking fee awards bear the risk that the

14  lodestar will be subject to scrutiny and possible reduction due to unreasonable inefficiencies and

15  duplicative efforts engendered by multiple counsel."  *Stonebrae v. Toll Bros.*, No. C-08-0221 EMC,

16  2011 WL 1334444 at *12 (N.D. Cal. April 7, 2011).  There is no indication beyond the FBI's

17  general allegations that the work of Plaintiff's attorneys was in fact duplicative.  Furthermore,

18  Defendant fails to quantify how much duplicative time has been submitted in Plaintiff's time

19  records.

20          Finally, the FBI's objection to Plaintiff's attorneys' billing for "clerical" or "administrative"

21  time does not necessarily warrant a reduction in the hourly figures used to calculate the lodestar.

22  The government offers no evidence to show that this administrative time was, indeed, spent as part

23  of the overhead time needed to run a legal office as alleged.  Further, Plaintiff's attorneys clarify in

24  their Reply Brief  that entries of this kind refer to activities such as  "preparing or reviewing proper

25  tables for pleadings," and "reviewing and deciding what exhibits should be included" in documents:

26  "all tasks performed by junior legal professionals" and "their billing rate reflects this."  Pl.'s Reply

27  Brief at 11-12.  The Court will not impose further reductions on the basis of Defendants' general

28  objections.

2.      Hourly Fee Claimed

In assessing a reasonable hourly rate for the lodestar figure, courts should consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96 and Fn. 11 (1984). The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "The defendant may introduce rebuttal evidence in support of a lower hourly rate." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).

The burden is on the fee applicant to produce satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 896. Here, Rosenfeld claims that reasonable attorney rates for this case range from $100 to $700 per hour. To support these claims, James Wheaton and David Greene have submitted declarations establishing the rates they charged clients over the relevant time period, not their current billing rates (the rates Wheaton and Greene bill have increased over the years since the parties entered into their settlement agreement). They also cite recent cases awarding hourly fee payments at those rates. *See* Declaration of James Wheaton in Support of Plaintiff's Motion for [an] Award of Fees and Costs (Docket No. 157, Ex. 1) ("Wheaton Decl.") ¶ 39 (citing fee award of $700 per hour in *Environmental Law Foundation v. Laidlaw Transit*, San Francisco Superior Court case no. CGC-06-451832); Third Declaration of David Greene in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Costs (Docket No. 157, Ex. 2) ¶ 11 (citing fee award of $500 per hour in *Moreland LLC v. Old Republic Title Co.,* San Mateo Superior Court case no. civ-487714). Wheaton's declaration further states that Lowell Chow is a second year attorney whose hourly rate is $200 per hour, and that his office bills for student interns at $100 per hour. Wheaton Decl. ¶ 37. Plaintiff does not produce any evidence of past fee awards supporting the hourly rates suggested for legal fellows, student interns, or Mr.

United States District Court
For the Northern District of California

1   Chow, nor does he offer any information supporting Pondra Perkins's billing rate at $200.00 per

2   hour.  However, he has submitted a declaration from Richard Pearl providing market data that

3   generally supports the rates of compensation requested for all attorneys in this case.  *See* Declaration

4   of Richard Pearl in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Costs (Docket

5   No. 157, Ex. 3).

6           The FBI argues that the hourly rates suggested by Plaintiff are unreasonably high, but offers

7   no evidence to suggest that the rates proposed by Rosenfeld fall outside the prevailing market rate

8   commanded by lawyers of reasonably comparable skill, experience, and reputation in the San

9   Francisco Area.  *See Blum v. Stenson*, 465 U.S. at 895-96 and Fn. 11.  Without more evidence to

10  support its objection, the FBI's charge that the "fees sought by plaintiff are grossly excessive" is

11  unpersuasive.  Def.'s Response Brief at 18.

12  F.       Costs Incurred Bringing Fee Motion

13          Plaintiff seeks an additional $49,490.00 in fees for his attorneys' time spent on this fee

14  motion.  *See* Pl.'s Reply Br., Ex. A.  Plaintiffs may recover attorney's fees for time reasonably

15  expended on a motion for attorney's fees and costs.  *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir.

16  1990).  However, an inflated request for a "fees-on-fees" award may be reduced to an amount

17  deemed reasonable by the awarding court.  *See Jadwin v. County of Kern*, 767 F. Supp. 2d 1069,

18  1140 (E.D. Cal. 2011) (denying attorney's motion for "fees-on-fees" due to lack of a reasonable

19  basis for such an award); *Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982) ("Prevailing parties are

20  compensated for hours reasonably spent on fee-related issues.  A fee request that appears

21  unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny

22  one altogether.") (emphasis omitted).

23          The Court finds that Plaintiff's requested award for "fees-on-fees" in this case is "grossly

24  inflated."  *Farris v. Cox*, 508 F. Supp. 222, 227 (N.D. Cal. 1981) ("Even in civil rights cases, fees

25  may be denied in their entirety when petitioning lawyers are guilty of overreaching in seeking

26  outrageously unreasonable fees.").  Contemporaneous with this fee motion, Plaintiff brought a

27  parallel motion for attorney's fees and costs in the related matter of *Rosenfeld v. Federal Bureau of*

28  *Investigation, et. al.,* 3:07-cv-03240-EMC.  *See* Docket No. 149 in 3:07-cv-03240-EMC.  Both cases

24

1   involved claims brought under FOIA, and both fee motions were brought pursuant to 5 U.S.C. §

2   552(a)(4)(E).  As one would expect, most of the argument made in the first motion was repeated in

3   the second.  Likewise, as Defendant in both actions, the FBI offered substantially overlapping

4   arguments in opposition to Plaintiff's motions, and Plaintiff presented substantially overlapping

5   arguments in his replies.  Yet, across both actions Plaintiff asks to recover in excess of $125,000 for

6   fees incurred in bringing these motions (approximately $50,000 in this matter and $85,000 in the

7   related action).  Given the substantial degree of overlap between these two fee motions, and the

8   corresponding efficiencies Plaintiff's counsel should have realized in preparing and defending these

9   motions against the *same defendant* on the *same type of legal claim*, the Court finds Plaintiff's

10  requested fee award to be unreasonable and inflated.  The motion is not particularly complicated,

11  and counsel are experienced in this field.  After reviewing the record, the Court concludes that

12  Plaintiff's award of "fees-on-fees" should be reduced by 30%.[15]

13  G.     Lodestar Figure

14         Applying Plaintiff's attorneys' rates of compensation to the hours claimed by Plaintiff's

15  attorneys results in an initial lodestar figure of $165,642.49.  From this initial figure, the Court

16  deducts ten percent from Phase I of the proposed lodestar to compensate for time spent by Plaintiff's

17  attorneys on non-compensable monitoring, resulting in an adjusted Phase I total of $82,208.47.  The

18  Court likewise eliminates 100% of the time billed by Plaintiff's attorneys for Phase II from the

19  lodestar.  The Court also reduces the amount sought by Plaintiff under Phase III, Plaintiff's fees

20  associated with bringing this fee motion, by 30%, to an adjusted amount of $34,643.  After these

21  reductions are taken, the resulting adjusted lodestar figure amounts to $116,851.47.  Subtracting a

22  further ten percent from this adjusted figure to account for inefficiencies and the exercise of billing

23  judgment results in a final fee award of $105,166.32.  The Court also awards the sum of $2,075.83

24  representing Plaintiff's full costs in this matter.  *See* Wheaton Declaration ¶ 20.  Having found that

25

26         [15]  The Court also notes that Plaintiff incurred $50,000 in fees to litigate a motion seeking
    $115,000 in fees on the merits phase.  On the merits phase, the Court awards less than $80,000 after
27  discounts.  The lodestar of $50,000 for fees on this motion is disproportionate to the merits fees at
    stake.  *See Thompson v. Gomez*, 45 F.3d 1365, 1368 (9th Cir. 1995) (relative degree of success on
28  the merits of case may inform the size of the fee on fee award).

**United States District Court**
For the Northern District of California

1   Rosenfeld substantially prevailed in this suit, and that the government lacked a reasonable basis in

2   law for withholding the records at issue, the Court rejects the FBI's argument that costs incurred

3   ought to be borne by each party respectively.

### III.   CONCLUSION

5        For the reasons stated above, this Court finds that Rosenfeld has demonstrated both

6   eligibility and entitlement to an award of attorney's fees.  The record in this case demonstrates that

7   he "substantially prevailed" on the part of this case for which an award is approved.  Further, the

8   Court finds that all four *Long* factors in assessing entitlement to a fee award under FOIA weigh in

9   Rosenfeld's favor.  Rosenfeld is eligible and entitled to a fee award under FOIA.

10        After scrutinizing Plaintiff's billing records, and adjusting the number of hours claimed to

11   account for unrecoverable "monitoring" time, vague billing records, and general inefficiency, and an

12   inflated request for fees associated with bringing this motion, the Court **GRANTS** Plaintiff's Motion

13   for an Award of Attorneys' Fees and Costs, and awards Plaintiff a total of **$107,242.15**.

14        This order disposes of Docket No. 157.

16        IT IS SO ORDERED.

18   Dated:  October 17, 2012

20   _____
     EDWARD M. CHEN
     United States District Judge

26